Gary S. Graifman, Esq. (GSG-2276)
**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**
747 Chestnut Ridge Road - Suite 200
Chestnut Ridge, New York 10977
Tel: 845-356-2570
*Proposed Lead Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | |
|---|---|
| QUANG LE, INIDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | CaseNo.1:09-cv-8616 (JGK) |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| SPONGETECH DELIVERY SYSTEMS, INC., MICHAEL L. METTER, STEVEN MOSKOWITZ FRANK LAZAUSKAS, AND RM ENTERPRISES INTERNATIONAL, INC., | |
| Defendants. | |

------------------------------------------------------------------X

| | |
|---|---|
| JEFFREY P. ORLAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No.: 1:09-cv-9037 (JGK) |
| Plaintiff, | CLASS ACTION |
| v. | |
| SPONGETECH DELIVERY SYSTEMS, INC., MICHAEL L. METTER, STEVEN MOSKOWITZ FRANK LAZAUSKAS, AND RM ENTERPRISES INTERNATIONAL, INC., | |
| Defendants. | |

------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
PATRICK SULLIVAN, DENNIS J. FOGELL, AND LISA FOGELL
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS
AND APPROVAL OF SELECTION OF LEAD COUNSEL**

Gary S. Graifman, Esq. (GSG-2276)
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
747 Chestnut Ridge Road - Suite 200
Chestnut Ridge, New York 10977
Tel: 845-356-2570
*Proposed Lead Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | |
|---|---|
| QUANG LE, INIDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | CaseNo.1:09-cv-8616 (JGK) |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| SPONGETECH DELIVERY SYSTEMS, INC., MICHAEL L. METTER, STEVEN MOSKOWITZ FRANK LAZAUSKAS, AND RM ENTERPRISES INTERNATIONAL, INC., | |
| Defendants. | |

------------------------------------------------------------------X

| | |
|---|---|
| JEFFREY P. ORLAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No.: 1:09-cv-9037 (JGK) |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| SPONGETECH DELIVERY SYSTEMS, INC., MICHAEL L. METTER, STEVEN MOSKOWITZ FRANK LAZAUSKAS, AND RM ENTERPRISES INTERNATIONAL, INC., | |
| Defendants. | |

------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
PATRICK SULLIVAN, DENNIS J. FOGELL, AND LISA FOGELL
AS PROPOSED LEAD PLAINTIFFS, FOR CONSOLIDATION, APPOINTMENT
AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL
AND APPROVAL OF SELECTION OF LEAD COUNSEL**

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

ARGUMENT

    I.       THE ACTIONS SHOULD BE CONSOLIDATED . . . . . . . . . . . . . . . . . .5

    II.      THE SULLIVAN LEAD PLAINTIFF
           GROUP IS THE "MOST ADEQUATE
           PLAINTIFF" UNDER THE EXCHANGE ACT . . . . . . . . . . . . . . . . . . .6

    III.     THE PROPOSED LEAD PLAINTIFFS ARE
           QUALIFIED UNDER RULE 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           A. The Claims of the Sullivan Lead Plaintiff
              Group Are Typical of the Claims of the Class . . . . . . . . . . . . . . . . . .9

           B. The Sullivan Lead Plaintiff Group
              Will Fairly And Adequately
              Represent The Interests Of The Class . . . . . . . . . . . . . . . . . . . . . . .10

    IV.     THIS COURT SHOULD APPROVE THE
           SULLIVAN LEAD PLAINTIFF GROUP'S
           SELECTION OF LEAD COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## **TABLE OF AUTHORITIES**

### **Table of Cases**

Avagliano v. Sumitomo Shoji America, Inc., 103 F.R.D 562 (S.D.N.Y. 1984). . . . . . . . 10

Bishop v. New York City Dept. Of Housing Preservation and
Development, 141 F.R.D. 229, 238 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Ellenberg v. JA Solar Holdings Co., Ltd., Civ. Action No. 08-cv-10475 (JGK),
2009 WL 103362 (S.D.N.Y. April 17, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Fields v. Biomatrix, Inc., 198 F.R.D. 451, 454 (D.N.J. 2000) . . . . . . . . . . . . . . . . . . . . . 5

Greebel v. FTP Software, 939 F. Supp, 57, 64 (D. Mass. 1996) . . . . . . . . . . . . . . . . . . . 7

In re Drexel Burnham Lambert Grouop, Inc., 960 F.2d 285, 291
(2d Cir. 1992), cert. dismissed sub nom., 506 U.S. 1088 (1993). . . . . . . . . . . . . . . . . . 9

In re SLM Corp. Sec. Litig., Civ. Action No. 08-cv-1029,
2009 WL 969934 (S.D.N.Y. April 1, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir.),
cert. denied, 498 U.S. 920 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Jolly Roger Offshore Fund, Ltd.. v. BKF Capital Group, Inc.,
Civ. Action No. 07-cv-3923, 2007 WL 2363610 (S.D.N.Y. Aug. 16, 2007) . . . . . . . . . .9

Varghese v. China Shenghou Pharm. Holdings, Inc.,
589 F.Supp.2d 388 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Walsh v. Northrop Grumman Corp., 162 F.R.D. 440, 445 (E.D.N.Y. 1995) . . . . . . . . . .10

### **Table of Statutes**

Federal Rules of Civil Procedure, Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

Federal Rules of Civil Procedure, Rule 42 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Securities Exchange Act of 1934, § 10(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Securities Exchange Act of 1934, § 20(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Securities Exchange Act of 1934, §21D (a) (3)(A) (i) . . . . . . . . . . . . . . . . . . . . . . . . . .2,6

Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a) (1) . . . . . . . . . . . . . . . . . . . . . . 6

Securities Exchange Act of 1934, Section 21D (a) (3) (B). . . . . . . . . . . . . . . . . . . . . . . .1,6

Securities Exchange Act of 1934, Section 21D (a) (3) (B) (iii) (I) (cc) . . . . . . . . . . . . . 8

Securities Exchange Act of 1934, 15 U.S.C. §78u-4 (a) (3) (B) (v) . . . . . . . . . . . . . . .11

Movants, Patrick Sullivan, Dennis Fogell and Lisa Fogell (collectively, the "Sullivan Lead Plaintiff Group" or "Movants") respectfully submit this memorandum of law in support of their motion for an Order (i) consolidating the above-captioned actions; (ii) appointing the Sullivan Lead Plaintiff Group as lead plaintiffs in the Action under Section 21D(a)(3)(B) of the Securities Exchange Act of 1934; and (iii) approving the Sullivan Lead Plaintiff Group selection of Kantrowitz Goldhamer & Graifman, P.C. to serve as Lead Counsel.

## INTRODUCTION

Presently pending in this District are at least two actions brought against SpongeTech Delivery Systems, Inc., various related entities and certain of its officers and directors (collectively "SpongeTech" ) pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act" or "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated thereunder. The claims are asserted on behalf of purchasers of the securities in SpongeTech who purchased their securities between April 15, 2008 and October 5, 2009, inclusive (the "Class Period").

The Sullivan Lead Plaintiff Group collectively purchased over 3 million shares of SpongeTech stock during the Class Period and suffered collective losses[1] of approximately $214,151.88 as a result of those transactions. Proposed lead plaintiffs herein executed and returned to counsel certification forms evidencing their willingness to serve as class

---

[1]   The losses suffered by the Movants are not the same as their legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation. The approximate losses can, however, be determined from the certifications required under Section 21 of the Exchange Act and based upon information concerning the current market for the Company's common stock.   See Graifman Decl., Exhibit C.

1

representatives.[2] (See Certifications of Movants, annexed as Exhibit "B" to the Declaration of Gary S. Graifman submitted in support of the within motion ("Graifman Decl." hereinafter). The proposed lead plaintiff group is comprised of three individuals who have a pre-existing relationship which predates this lawsuit and predates even their purchase of SpongeTech stock. The members of the Sullivan Lead Plaintiff Group all know each other and reside in the Daytona Beach, Florida area.

The Sullivan Lead Plaintiff Group are the most adequate plaintiffs, as defined by the PSLRA. In addition, the Sullivan Lead Plaintiff Group, for the purposes of this motion, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure because their claims are typical of the claims of the putative class and because they will fairly and adequately represent the interests of the class.

## PROCEDURAL HISTORY

On October 9, 2009, plaintiff in the Quang Le action[3] filed a securities class action complaint on behalf of purchasers of the securities of SpongeTech on the open market between April 15, 2008 through and including October 5, 2009, against SpongeTech, certain of its officers and directors and a related entity, RM Enterprises International, Inc. Pursuant to §21D (a)(3)(A)(i) of the Exchange Act, on October 9, 2008, plaintiff in the Quang Le action caused notice of pendency of the action to be published on behalf of the Class. See Graifman Decl., Exhibit A. The notice advises purchasers of SpongeTech stock of the existence of a lawsuit against the defendants and the nature of the defendants' alleged misstatements and omissions

---

2    See Graifman Decl., Exhibit B.

3    Quang Le, et al v. SpongeTech Delivery Systems, Inc., et al., Civ. No. 08-cv-8616(JGK).

which artificially inflated the price of common stock. The notice further advised class members of their right to move the Court to be appointed lead plaintiff within sixty (60) days thereafter.

## FACTUAL BACKGROUND

This is a federal securities class action brought on behalf of a class consisting of all persons and entities other than defendants, who purchased the securities of SpongeTech between April 15, 2008 and October 5, 2009, inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of federal securities laws (the "Class").

The complaint charges that SpongeTech and certain of its officers and directors were running a stock manipulation scheme and made materially false submissions to the SEC and the public.   On September 17, 2009, the *New York Post* issued an article entitled "Not Spongeworthy."    The article disclosed accusations that "SpongeTech is running a stock manipulation scheme" which have made their way to the SEC.   The article also revealed that the Company's former auditor, Drakeford & Drakeford, lost is accreditation from the PCAOB, requiring SpongeTech to have its previously reported financial statements for the last two years reaudited.  This announcement, issued before market open, caused the Company's stock to fall $.023 per share or 20.4% on September 17, 2009.

On September 22, 2009, the *New York Post* published an article entitled "Spongetech is All Wet."   The article, citing a former SpongeTech attorney, revealed that SpongeTech had allegedly forged dozens of legal documents in connection with the Company's issuance of stock. The article also raised questions about the legitimacy of the Company's reported revenues and the SpongeTech's customers.  This article, issued before the market opened, caused the Company's stock to fall $0.015 per share or 12.5% on September 22, 2009.

3

On September 25, 2009, the *New York Post* published an article entitled "SpongeTech client records spring leak." The article raised serious questions about the legitimacy of SpongeTech's customers. In its third-quarter SEC filing, SpongeTech said that six customers "accounted for 99.4 percent of sales" – nearly $31 million in revenue -- for the first nine months of its fiscal year. However, of those six firms, SA Trading Company, US Asia Trading, Dubai Export Import Company, Fesco Sales Corp., New Century Media and Walgreens, all but one of those companies, Walgreens, was hard to track. According to the article, the investigation by the reporter involved found that their addresses could not be verified, phone numbers were disabled and the Web sites for three of the companies were created on the same day two weeks before. This article, issued before the market opened on September 25, 2009, caused SpongeTech's stock to fall $0.011 per share or 9.7% on that date.

After market close on Friday, September 25, 2009, SpongeTech filed an 8-K with the SEC revealing that "[o]n September 18, 2009, the Company received a formal order of investigation issued by the SEC regarding possible securities laws violations by the Company and/or other persons." The 8-K also revealed that the "Company and its officers and directors received subpoenas requesting the delivery of certain documents." No explanation was provided as to why the Company delayed in disclosing this information to investors.

On September 28, 2009, before the market-opened, the *New York Post* published an article entitled "SEC Looks For SpongeTech Stain." The September 25, 8-K and September 28 New York Post article caused the Company's stock to fall $0.017 per share or 21.5% on September 28, 2009.

On October 1, 2009, GetFugu, Inc., a publicly traded company with which SpongeTech

had previously announced a business relationship, filed an 8-K with the SEC revealing SpongeTech's market manipulation of its own stock and raised additional questions about the legitimacy of SpongeTech's operations. The filing of the Form 8-K by GetFugu's on October 1, 2009, caused SpongeTech's stock to fall $.012 per share or 15% on October 2, 2009.

On October 5, 2009 (e.g., the last day of the Class Period), the SEC announced the temporary trading suspension of SpongeTech's stock.

The Class Period begins on April 15, 2008 when the Company filed with the SEC a materially false quarterly report, Form 10-QSB, for the third quarter ended February 28, 2007. This April 15, 2008 Form 10-QSB, was followed by a multitude of materially false SEC submissions and press releases regarding SpongeTech's financial performance.

Thus, the Company's financial statements were materially false and misleading.

## ARGUMENT

## I.    THE ACTIONS SHOULD BE CONSOLIDATED

The above-captioned actions involve class action claims on behalf of purchasers of SpongeTech securities and assert essentially similar and overlapping class claims for relief brought on behalf of purchasers of SpongeTech securities. Consolidation is appropriate where, as here, there are actions involving common questions of law or fact. See Fed. R. Civ. P. 42 (a); Ellenberg v. JA Solar Holdings Co., Ltd., Civ. Action No. 08-cv-10475 (JGK), 2009 WL 103362 (S.D.N.Y. April 17, 2009), citing Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir.), cert. denied, 498 U.S. 920 (1990); See also, Fields v. Biomatrix, Inc., 198 F.R.D. 451, 454 (D.N.J. 2000). That test is met here and the Actions should be consolidated.

5

## II.    THE SULLIVAN LEAD PLAINTIFF GROUP IS THE "MOST ADEQUATE PLAINTIFFS" UNDER THE EXCHANGE ACT

Section 21D of the Exchange Act, as amended, sets forth the procedure for the selection of lead plaintiffs in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a) (1).[5] Specifically, §21D (a) (3) (A) (i) provides that, within 20 days after the date on which a class action is filed:

the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class --

(I)    of the pendency of the action, the claims asserted therein, and the purported class period; and

(II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the Court to serve as lead plaintiff of the purported class.

15 U.S.C. §78u-4 (a) (3) (A) (i).

On October 9, 2009, plaintiff in the Quang Le action caused notice of this action to be published on behalf of the Class. See Graifman Decl., Exhibit A. The notice advised purchasers of SpongeTech securities of the existence of a lawsuit against defendants and the nature of the defendants' alleged misstatements and omissions which artificially inflated the price of SpongeTech securities. The notice further advised class members of their right to move the Court to be appointed lead plaintiff within sixty (60) days.

Further, §21D (a) (3) (B) of the Exchange Act directs the Court to consider any motion

---

5    These amendments to the Exchange Act codified Public Law No. 104-67, §101 entitled the Private Securities Litigation Reform Act of 1995 (the "PSLRA" or the "Reform Act").

made by a purported class member to serve as lead plaintiff in response to any such notice within 90 days after the date of publication of the notice pursuant to §21D.

Under this section of the Exchange Act, the court "shall" appoint the "most adequate plaintiff," and it is presumed that plaintiff is the person, or group of persons, that:

(aa)    has either filed the complaint or made a motion in response to a notice . . .;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  Section 21D (a) (3) (B) (iii) (I).

Under the Exchange Act, a rebuttable presumption exists whereby the plaintiff with the largest financial interest in the litigation and who otherwise satisfies the requirements or Rule 23 of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff to lead the action.  See e.g., Greebel v. FTP Software, 939 F. Supp, 57, 64 (D. Mass. 1996).

The Sullivan Lead Plaintiff Group is qualified to represent the proposed class.  The Sullivan group consists of three (3) investors who purchased over three million (3,000,000) shares of SpongeTech stock during the Class Period and suffered losses of approximately $214,151.88 as a result of these transactions.[6]  Each member has signed and filed a sworn certification that he or she has reviewed the complaint and authorized the filing of the complaint on his/her behalf, and is willing to serve as a representative party on behalf of the class.[7]  In addition, the members of the Sullivan Lead Plaintiff Group constitute a pre-existing group who

---

6    See Graifman Decl., Exhibit C.  The losses of the Sullivan Lead Plaintiff Group are calculated based upon FIFO and are as follows:  Patrick Sullivan: $150,854.27, Dennis Fogell: $21,689.61, and Lisa Fogell: $41,608.00.

7    See Graifman Decl., Exhibit B.

are acquaintances; who have all known each other prior to the commencement of this suit and during the time that they purchased SpongeTech stock; and who reside in the Daytona Beach, Florida area.

The Sullivan Lead Plaintiff Group, have a substantial financial interest in the relief sought by the class. Moreover, the Sullivan Lead Plaintiff Group satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure because their claims are typical of the claims of the class and their interests are clearly aligned with the members of the class, thus ensuring that they will fairly and adequately represent the interests of the class, and they have retained experienced class counsel to represent the class. Lead plaintiff applicants with the largest financial interest are entitled to the rebuttable presumption in favor of appointment as lead plaintiffs. Ellenberg, supra, at *2.

Accordingly, the Sullivan Lead Plaintiff Group satisfy the prerequisites for appointment as Lead Plaintiffs pursuant to §21D (a) (3) (B) of the Exchange Act.

## III.    THE PROPOSED LEAD PLAINTIFFS ARE QUALIFIED UNDER RULE 23

Section 21D (a) (3) (B) (iii) (I) (cc) of the Exchange Act provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Only the typicality and adequacy prerequisites to class certification directly address the personal characteristics of the class representatives. Consequently, in deciding a motion to serve as lead plaintiff or plaintiffs, a wide-ranging analysis under Rule 23 is inappropriate and should be left for consideration of a motion for class certification. See, Jolly Roger Offshore Fund, Ltd.. v. BKF Capital Group, Inc., Civ. Action No. 07-cv-3923, 2007 WL 2363610 (S.D.N.Y. Aug. 16, 2007) at *4; In re SLM Corp. Sec. Litig., Civ. Action No. 08-cv-1029, 2009 WL 969934 (S.D.N.Y. April 1, 2009) at *3;  See also, Varghese v. China Shenghou Pharm. Holdings, Inc., 589 F.Supp.2d 388, 397 (S.D.N.Y. 2008).  As detailed below, each member of the Sullivan Lead Plaintiff Group satisfy the typicality and adequacy requirements of Rule 23(a), thereby justifying their appointment as Lead Plaintiffs in this action.

### A.    The Claims of the Sullivan Proposed Lead Plaintiffs Are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists if claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." See In re Drexel Burnham Lambert Group, Inc., 960 F. 2d 285, 291 (2d Cir. 1992), cert. dismissed sub nom., 506 U.S. 1088 (1993).  The claims, however, of the class representative need not be identical to the claims of the class to satisfy the typicality requirement.  Instead, the courts have recognized that:

> [T]he typicality requirement may be satisfied even if
> there are factual dissimilarities or variations
> between the claims of the named plaintiffs and
> those of other class members, including distinctions
> in the qualifications of the class members.

Bishop v. New York City Dept. Of Housing Preservation and Development, 141 F.R.D. 229, 238

9

(2d Cir. 1992).  See also Avagliano v. Sumitomo Shoji America, Inc., 103 F.R.D 562, 582
(S.D.N.Y. 1984).

      The Sullivan Lead Plaintiff Group seek to represent a class of purchasers of the
Company's common stock who have identical, non-competing and non-conflicting interests.  The
Sullivan Lead Plaintiff Group satisfy the typicality requirement, because they: (i) purchased the
Company's stock; (ii) at market prices allegedly artificially inflated as a result of defendants'
violations of the federal securities laws; and (iii) suffered damages thereby.  Thus, typicality is
satisfied since the claims asserted by the Sullivan Lead Plaintiff Group arise "from the same
event or course of conduct that gives rise to claims of other class members and the claims are
based on the same legal theory." Walsh v. Northrop Grumman Corp., 162 F.R.D. 440, 445
(E.D.N.Y. 1995).

**B.  The Sullivan Lead Plaintiff Group
Will Fairly And Adequately Represent
The Interests Of The Class**

      For purposes of the lead plaintiff determination, adequacy is contingent upon the
existence of common interests between the proposed lead plaintiffs and the class, and a
willingness on the part of the proposed lead plaintiffs to vigorously prosecute the action.

      As detailed above, the Sullivan Lead Plaintiff Group share substantially similar questions
of law and fact with the members of the Class, and their claims are typical of the members of the
Class.  Each of the Sullivan Lead Plaintiff Group members have amply demonstrated his or her
adequacy as a class representative by signing a certification, filed with the Court, affirming his or
her willingness to serve as, and assume the responsibilities of, a class representative.

      Further, the Sullivan Lead Plaintiff Group' substantial losses provide an incentive to

vigorously prosecute the action on behalf of the class. In addition, the Sullivan Lead Plaintiff Group have selected counsel highly experienced in prosecuting securities class actions to represent them and, in addition, such counsel is located in the New York metropolitan area, where the suit is pending, where the corporation maintains its principal place of business, and where the defendants' reside. See Graifman Decl., Exhibit D. The close alignment of interests between the Sullivan Lead Plaintiff Group and other class members, and the strong desire of the Sullivan Lead Plaintiff Group to prosecute these actions on behalf of the class, provide ample reason to grant their motion for their appointment as Lead Plaintiffs in these actions.

## IV.  THIS COURT SHOULD APPROVE THE SULLIVAN LEAD PLAINTIFF GROUP'S SELECTION OF LEAD COUNSEL

The Exchange Act vests authority in the Lead Plaintiff to select and retain lead counsel, subject only to court approval. See 15 U.S.C. §78u-4 (a) (3) (B) (v). Thus, the Court should not disturb the Sullivan Lead Plaintiff Groups' choice of counsel unless "necessary to protect the interests of the plaintiff class." See Statement of Managers — The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H12691-08, at H13700 (daily ed. Nov. 28, 1995). The Sullivan Lead Plaintiff Group have retained Kantrowitz, Goldhamer & Graifman, P.C. ("KGG") to serve as Lead Counsel to pursue this litigation on their behalf in the event the Sullivan Lead Plaintiff Group are appointed Lead Plaintiffs. The KGG firm possesses extensive experience in the area of securities class action litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. See Graifman Decl., Exhibit D.

Accordingly, the Court may be assured that, in the event the instant motion is granted, the members of the Class will receive the highest caliber of legal representation available.

11

## V.    <u>CONCLUSION</u>

For the above reasons, and in order to promote judicial economy, the Sullivan Lead

Plaintiff Group respectfully request that the Court (i) consolidate the above-captioned actions;

(ii) appoint the Sullivan Lead Plaintiff Group as Lead Plaintiffs in the actions; and (iii) approve

the Sullivan Lead Plaintiff Groups' selection of Lead Counsel for the Proposed Class.

DATED:        December 8, 2009

                                    Respectfully submitted,

                                    **KANTROWITZ, GOLDHAMER**
                                    **& GRAIFMAN, P.C.**

                                    By: _____
                                    Gary S. Graifman (GSG-2276)
                                    747 Chestnut Ridge Road - Suite 200
                                    Chestnut Ridge, New York 10977
                                    ggraifman@kgglaw.com
                                    Tel: 845-356-2570
                                    Fax: 845-356-4335

                                    *Proposed Lead Counsel For*
                                    *Plaintiffs and the Class*

12